**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-cr-731 (RC)** |
| | **:** | |
| **LAWRENCE LIGAS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNT ONE OF THE INDICTMENT**

The defendant, Lawrence Ligas ("Mr. Ligas" or "the defendant"), has filed a motion to dismiss Count One of the Indictment. ECF No. 56. Mr. Ligas argues that the text of 18 U.S.C. § 1512(c)(2) is not applicable to his conduct and is unconstitutionally vague. However, because Count One the Second Superseding Indictment properly alleges an offense under Section 1512(c) and the defendant's other arguments have been foreclosed by precedent, the Court should deny the motion.

## PROCEDURAL BACKGROUND

On December 13, 2021, Mr. Ligas was charged via criminal information with four misdemeanor counts related to his acts at the U.S. Capitol on January 6, 2021. ECF No. 7. On January 3, 2024, a grand jury returned a Superseding Indictment, ECF No. 44, charging Mr. Ligas with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), 2, in addition to the previously charged misdemeanor counts.

On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. --, 144 S. Ct. 2176 (2024). On September 23, 2024, the Court ordered the government to inform the Court whether it intended to proceed on Count One in light of the Supreme Court's decision in *Fischer*. *See* Minute Order (Sep. 23, 2024). On September 30, 2024, the government

1

filed a Notice of Intent to Proceed on Count One, in which it also indicated that the government was evaluating whether additional charges may be appropriate. ECF No. 55. Later that same day, Mr. Ligas filed a motion to dismiss Count One of the Superseding Indictment. ECF No. 56.

On October 9, 2024, a grand jury returned a Second Superseding Indictment, ECF No. 58, charging Mr. Ligas with: (1) in Count One, obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c), 2; (2) in Count Two, civil disorder, in violation of 18 U.S.C. § 231(a)(3); (3) in Count Three, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) in Count Four, committing disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) in Count Five, committing disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) in Count Six, parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

With respect to Count One, the Second Superseding Indictment alleges the following in charging Mr. Ligas with violating 18 U.S.C. § 1512(c) and aiding and abetting others to do so:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **LAWRENCE LIGAS** attempted to, and did, corruptly alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use in an official proceeding, and otherwise obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 58 at 1.

## FACTUAL BACKGROUND

The Court is quite familiar with the general facts concerning the riot at the U.S. Capitol on January 6, 2021, where Mr. Ligas committed the offenses charged in this case. The government refers the Court for additional detail regarding the overarching events of that day to the Statement

of Facts filed in support of the Criminal Complaint in this case, ECF No. 1-1, which also contains some but not all of the factual allegations set forth below.

In the weeks leading up to January 6, 2021, Mr. Ligas repeatedly took to social media to discuss the process by which the results of the 2020 presidential election would be certified. For example, as early as December 15, 2020, Mr. Ligas posted a detailed description of the physical ballots that would be used in the certification and how they would be sent to Washington, D.C., to be unsealed on January 6:

> Today, the electoral college votes will be sealed and sent by special carrier to Washington where they will remain sealed until January 6th when the House and Senate will come into a joint session to open the votes. . . Vice President Mike Pence will have all the authority as president of the Senate for that day and will accept or reject motions to decide the next steps by the assembly.

In that same Facebook post, Mr. Ligas continued to detail the technical processes by which Congress would resolve any objections to the ballots and concluded that "[i]f this scenario runs true, President Trump gets re-elected."

As January 6, 2021, grew nearer, Mr. Ligas continued to focus on the certification proceedings and called on others to "show up on January 6th to tell the idiot Congress to stop the steal." Nevertheless, as late as January 5, Mr. Ligas expressed "hope VP Pence [would] reject the certification."

As alleged in the Statement of Facts, Mr. Ligas then traveled from his home in Illinois to Washington, D.C. in anticipation of the Joint Session of Congress he had described on Facebook and, on the afternoon of January 6, Mr. Ligas joined the mob that stormed the Capitol and drove the Joint Session of Congress to a halt. ECF No. 1-1 at 1–4. After breaking through police lines on the Capitol's East Plaza, Mr. Ligas approached the East Rotunda Doors with that mob. There, Mr. Ligas told a reporter, "They are stealing our integrity. We want justice. We want justice now. We are coming in. Stop the steal." Then, when the reporter asked Mr. Ligas what he would do once he

gained entry to the Capitol building, Mr. Ligas responded, "We're going to go in there and shake up the Senate."

Shortly thereafter, at approximately 2:40 p.m. EST, Mr. Ligas unlawfully entered the Capitol building through the East Rotunda Doors after rioters overwhelmed police officers guarding that entrance. ECF No. 1-1 at 3–4. Mr. Ligas then entered into the Rotunda, where he photographed himself and other rioters who had breached the building. *Id.* at 4, 8.

**ARGUMENT**

## I.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient under the Constitution and Rule 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). This may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976). As such, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined *without a trial*

*on the merits.*" *Id.* (emphasis added). Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015). Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, Case No. 1:21-cr-93 (RCL), ECF 67 (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## II.    COUNT ONE (OBSTRUCTION OF AN OFFICIAL PROCEEDING) SHOULD NOT BE DISMISSED, NOTWITHSTANDING THE SUPREME COURT'S DECISION IN *FISCHER*

In moving to dismiss Count One, Mr. Ligas contends that the charging language is insufficient in light of *Fischer*, 144 S. Ct. at 2176, that Congress's January 6 session was not an "official proceeding" under the statute, and that the statute is unconstitutionally vague. ECF No.

56 at 2, 4, 9. But each of these grounds for dismissal offered by Mr. Ligas either exceeds the proper scope of a motion to dismiss by asking the Court to weigh facts and allegations outside the Second Superseding Indictment or raises legal contentions previously considered and rejected by this Court and the D.C. Circuit.

### A.    The Second Superseding Indictment Sufficiently Alleges an Offense Under Section 1512(c)

First, Mr. Ligas contends that Count One no longer states an offense in light of the Supreme Court's decision in *Fischer*. ECF No. 56 at 2. As a preliminary matter, this argument addresses Count One of the First Superseding Indictment, which charged Mr. Ligas with violating 18 U.S.C. § 1512(c)(2). ECF No. 44. In contrast, the Second Superseding Indictment charges Mr. Ligas with violating 18 U.S.C. § 1512(c), a difference which is reflected in the charging language. ECF No. 58 at 1–2. Therefore, some of the arguments raised in the defendant's motion may now be moot. *Compare id.* with ECF No. 56 at 4–5 ("Count One of the indictment does not allege that Mr. Ligas impaired the availability of records, documents, objects or other such things, or that he did so corruptly, in order to impede an official proceeding.")

To the extent the Court does not find the Defendant's motion to be moot, however, the Court can treat it as seeking the dismissal of Count One of the Second Superseding Indictment. The motion fares no better under this approach: the Second Superseding Indictment recites the statutory language of § 1512(c), and, for purposes of a motion to dismiss, the Court's inquiry can end there.

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1) (emphasis added). Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."

*United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). A criminal defendant may move for dismissal based only on a defect in the indictment, such as a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See United States v. Bingert*, 605 F. Supp. 3d 111, 117 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-CR-453 (JDB), 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, 596 F. Supp. 3d 90, 96 (D.D.C. 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes") (emphasis in original, quotation marks and citation omitted). A charging document may also fail to state an offense if the statutory provision at issue does not apply to the charged conduct or if the statutory provision at issue is unconstitutional. *See, e.g., United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (citation omitted)), vacated on other grounds, 898 F.3d 36 (D.C. Cir. 2018). In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

Here, the Second Superseding Indictment sufficiently alleges a violation of 18 U.S.C. § 1512(c), and the Supreme Court's decision in *Fischer* is no bar to a trial on the merits. The text of Count One mirrors the statutory language defining the offense. *Compare* 18 U.S.C. § 1512(c) with

ECF No. 58 at 1. Beyond this, an assessment of the government's proof of Mr. Ligas's conduct will require a trial on the merits. Accordingly, *Fischer* provides no basis to dismiss Count One for failure to state an offense and the Court should allow trial to proceed on this count. *See Fischer* at 2194 (Jackson, J., concurring) ("And it might well be that Fischer's conduct, as alleged here, involved the impairment (or the attempted impairment) of the availability or integrity of things used during the January 6 proceeding").

### B.    "Official proceeding" includes Congress's certification of the Electoral College vote

Second, Mr. Ligas argues that Congress's constitutionally mandated Joint Session to count and certify the Electoral College votes of the presidential election and certifying the next President and Vice President of the United States does not constitute an "official proceeding." ECF 56 at 4–9. Instead, Mr. Ligas claims, the term "official proceeding" narrowly includes only those proceedings that are "tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice." *Id*. at 5. Both the D.C. Circuit and this Court have rejected this argument.

"The statutory definition of 'official proceeding' under § 1512(c)(2)," the D.C. Circuit has held, "includes a 'proceeding before the Congress.'" *United States v. Fischer*, 64 F.4th 329, 342-43 (D.C. Cir. 2023) (quoting 18 U.S.C. § 1515(a)(1)(B)). "Although appellees strain to argue that the Electoral College vote certification is not a 'proceeding before the Congress' because it does not involve 'investigations and evidence,' we see no such limit in the ordinary meaning of the word 'proceeding.'" *Id*. (citing *Proceeding*, Oxford English Dictionary (2d ed. 1989) ("[T]he carrying on of an action or series of actions.")). "Notably," the Circuit continued, "Congress follows statutory directives to complete the certification of the Electoral College vote, including: (1) convening a joint session at 1:00 PM on January 6 in the year following the presidential election; (2) appointing four tellers to read and list the votes; (3) announcement of the voting results

by the President of the Senate; and (4) allowing written objections from members of Congress, subject to a procedure for submitting and resolving such objections. Those directives reflect Congress's own intent that the vote certification shall be a 'proceeding before the Congress.'" *Id.* at 343 (citations omitted). In *Fischer*, 144 S. Ct. 2176, the majority opinion of the Supreme Court did not address the D.C. Circuit's holding that the electoral certification constituted an "official proceeding." In her concurrence, however, Justice Jackson implicitly affirmed the D.C. Circuit's interpretation by referring to Congress's certification of the Electoral College vote as an official proceeding. *Fischer*, 144 S. Ct. at 2194 (Jackson, J., concurring).

In other January 6 cases, this Court has rejected similar arguments. *See, e.g., United States v. Sabol*, 24-cr-35 (RC), Minute Entry (Aug. 18, 2023). Because this Circuit's governing law on this point has not changed, this Court should reject this argument once again and refuse to adopt Mr. Ligas's definition of "official proceeding," which is "inapt when interpreting the meaning of a 'proceeding *before the Congress*.'" *Fischer*, 64 F.4th at 343 (quoting 18 U.S.C. § 1515(a)(1)(B)); *see also United States v. Puma*, 596 F. Supp. 3d at 97–102 ("The Court concludes that Congress' activities on January 6, 2021, clearly constitute a formal assembly akin to a hearing and thus fall within this definition of an 'official proceeding' before 'the Congress.'").

### C. "Corruptly" is not unconstitutionally vague

Third, Mr. Ligas argues that the term "corruptly," as used in Section 1512(c), is unconstitutionally vague, rendering the statute constitutionally invalid. ECF 56 at 9–17.

As an initial matter, this argument is irrelevant at this stage because Count One is properly pled. The Supreme Court did not address the definition of "corruptly" in its *Fischer* decision, nor did it suggest that the term was constitutionally vague. Recognizing that the D.C. Circuit had not agreed upon a definition of "corruptly," however, Judge Walker in *Fischer* explained that the

9

indictments in that case nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.' That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote." *Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)). So too here: both the Superseding Indictment and the Second Superseding Indictment sufficiently allege that Mr. Ligas acted corruptly, and the Court should leave the exact definition of that term for trial, when the issue is properly before the Court.

In any event, the term "corruptly" is not unconstitutionally vague. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law." An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Notably, the void for vagueness doctrine is narrow. The challenger must overcome a strong presumption that duly enacted statutes are constitutional. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam). Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). "What

renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Indeed, district courts here have recognized a high bar for rendering a statute unconstitutionally vague and have advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask. Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40-BAH, 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395-BAH, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 void-for-vagueness motion). In sum, "[a] statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere. . . . Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct . . . at all." *Puma*, 576 F. Supp. 3d at 103 (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).

Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that the term is not unconstitutionally vague as used in Section 1512(c)(2). *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness").

More recently, in *United States v. Robertson*, the D.C. Circuit agreed that the term "corruptly," as used in Section 1512(c)(2) withstands a vagueness challenge. 86 F.4th 355, 369 (D.C. Cir. 2023). The *Robertson* court did not seek to identify *all* of the "multiple ways" in which Section 1512(c)(2)'s corrupt intent requirement could be satisfied. *Id.* at 368. Rather, it explained that the definition used in that case, which treated independently unlawful conduct as "corrupt," was not vague and, instead, "provide[d] an objective measure of culpable conduct that is straightforward to apply." *Id.* at 368–69. And, in *Brock*, the D.C. Circuit held that the district court did not clearly err by reading "corruptly" to require a showing of "dishonesty, an improper purpose, or consciousness of wrongdoing," noting that *any one of these showings* may be sufficient to establish corrupt intent. *Brock*, 2024 WL 875795 at *6.

Every court that has instructed a jury regarding the elements of a violation of Section 1512(c) has adopted some form of the language referenced in *Brock*—requiring a showing of dishonesty, an improper purpose, or consciousness of wrongdoing—often adding that the defendant must use unlawful means or act with an unlawful purpose. *See, e.g.*, *United States v. Sara Carpenter*, 21-cr-305-JEB (ECF 95); *United States v. Thomas Robertson*, 21-cr-34-CRC (ECF 86); *United States v. Dustin Thompson*, 21-cr-161-RBW (ECF 83); *United States v. Anthony Williams*, 21-cr-377-BAH (ECF 112); *United States v. Elmer Rhodes, et al*, 22-cr-15-APM (ECF 396); *United States v. Doug Jensen*, 21-cr-6-TJK (ECF 97). Under any of these common-sense constructions, the term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those who engage in lawful, innocent conduct—even when done with the intent to obstruct, impede, or influence the official proceeding.'" *Puma*, 576 F. Supp. 3d. at 103 (quoting *Sandlin*, 575 F. Supp. 3d at 33). It presents no vagueness concern.

## CONCLUSION

For the foregoing reasons, this Court should deny Mr. Ligas's motion to dismiss Count One of the indictment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:      */s/ Sean J. Brennan*
SEAN J. BRENNAN
Assistant United States Attorney
NY Bar No. 5954128
601 D Street NW
Washington, DC 20530
sean.brennan@usdoj.gov
(202) 252-7125

*/s/ J. Hutton Marshall*
JOSEPH HUTTON MARSHALL
Assistant United States Attorney
D.C. Bar No. 1721890
601 D Street NW
Washington, DC 20530
joseph.hutton.marshall@usdoj.gov
(202) 252-6299